IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-294-FL

| | | |
|---|---|---|
| RENA DECAROL LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| AT&T MOBILITY SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment (DE #18), to which plaintiff has responded in opposition (DE # 49). The motion is now ripe for ruling. For the following reasons, defendant's motion for summary judgment is granted.

## STATEMENT OF THE CASE

Plaintiff originated this employment discrimination lawsuit *pro se* on June 10, 2011, after receiving a Notice of Right to Sue letter from the EEOC. The case was reassigned to this court from Senior Judge James C. Fox on June 30, 2011. On July 5, 2011, defendant answered the complaint, denying any discrimination and asserting other defenses. The court entered an initial scheduling order on July 11, 2011, to which the parties responded with separate reports on August 1, and August 2, 2011. The court then entered a case management order setting the discovery and mediation deadline for January 20, 2012.

Plaintiff filed motions to compel and to amend case management order, which this court denied on September 26, 2011. On January 17, 2012, plaintiff filed a motion to compel, and defendant filed a motion for extension of time to complete discovery and for a status conference, in

light of continued negotiations over plaintiff's deposition. Those motions were referred to the magistrate judge and disposed of by order denying motions to compel and for status conference, but extending the deadline for deposition of plaintiff until February 24, 2012. After order was entered, plaintiff objected, on February 14, 2012, to defendant's characterizations of the parties' communications, as adopted in that order. When the parties finally agreed to an appropriate time and place for deposition, plaintiff refused to sign her deposition on the basis that it was conducted in bad faith and reduced to writing in an incomplete form.[1] Plaintiff's motion to exclude her deposition was submitted to the magistrate judge, and denied by order on March 27, 2012.

Due to delay in discovery, defendant moved for an extension of time to file dispositive motions on February 14, 2012, which was granted on March 1, 2012.[2] The parties were granted a new deadline to file dispositive motions of March 19, 2012. Defendant filed the instant motion for summary judgment on said deadline, to which plaintiff responded in opposition on April 11, 2012.[3] Defendant's motion for summary judgment is now granted for the reasons stated below.

## STATEMENT OF UNDISPUTED FACTS

A.   Background

---

[1] Plaintiff objected to the use of her unsigned deposition in evidence via her filings on February 28, and March 15, 2012. In addition to her deposition, plaintiff has provided a signed declaration, filed with the court on April 11, 2012. As discussed below, the material facts of this case are not in dispute.

[2] It later came to this court's attention that defendant did not notice plaintiff of its motion to extend time. Upon consideration of plaintiff's subsequent objection to defendant's motion for summary judgment, this court will not overturn its previous order. The motion was granted for good cause shown.

[3] Subsequent to these filings, the court continued the trial date on its own initiative from August 29, 2012, to a date and time to be noticed upon resolution of defendant's motion. Plaintiff objected to the continuance on September 11, 2012.

2

Plaintiff has been employed by defendant as a customer service representative in its Fayetteville, North Carolina call center since 2004. Lee Dep. 5, 8, 13; Lee Decl. ¶¶ 2-4. Plaintiff has received excellent performance ratings on her work. Lee Decl. ¶ 5; Phillips Decl. Ex. B. However, Valerie Phillips, director of the Fayetteville call center, had been concerned about plaintiff's "unusual behavior" since Phillips was contacted by plaintiff's team manager, Tammy Thompson, via email in December 2009. Phillips Decl. ¶¶ 5-6. Thompson pointed out that plaintiff was an excellent employee, but raised concerns that her past experiences gave plaintiff a "heightened sense of paranoia." Phillips Decl. Ex. B. Phillips asserted that plaintiff had "'fears' of being followed" which "has the potential to create an uncomfortable environment." Id. Thompson ended up speaking to plaintiff regarding her "concern with [plaintiff's] emotional well being," and reported that plaintiff was not worried about "people watching her." Id. At that time, Phillips decided not to take any further action except to "monitor the situation going forward." Phillips Decl. ¶ 6.

Two months later, plaintiff wrote an email to a team manager, Darlene Noble, (who did not supervise plaintiff) accusing Noble of stalking plaintiff. Phillips Decl. ¶ 7, Ex. C; Lee Decl. ¶ 7. This email came to the attention of Phillips, who was concerned that plaintiff's "erratic behavior" made her co-workers "afraid for their own safety in the workplace." Id. at ¶ 9. At this point, Phillips decided to meet with plaintiff to explain "that her behavior was not conducive to the workplace, and that she might want to talk to a doctor about some of the things she was experiencing." Id. at ¶ 11.

On February 19, 2010, plaintiff reported to work as usual and found that her entry card would not admit her to the building. Lee Dep. 21; Lee Decl. Ex. 4. Plaintiff was then brought to a meeting with Phillips and Carrie Lambertus, area manager with a supervisory role over plaintiff's team. Lee Dep. 11-12, 21-22; Phillips Decl. ¶¶ 2-3; Lee Decl. Ex. 4. Plaintiff was not given notice of the

meeting, which gave rise to the current litigation. Phillips Decl. ¶¶10-11; Lee Decl. Ex. 4; Lee Dep. 21.

B.   The Meeting

At the meeting with Phillips and Lambertus, plaintiff was informed that her behavior had begun to impact other employees. Lee Decl. ¶ 9; Phillips Decl. ¶ 11. Plaintiff was given examples of her bizarre behavior, including accusing two co-workers of following plaintiff, asserting she was being watched by cameras that had been installed in the call center, and reports Phillips had received from Thompson relating that plaintiff mentioned some past dispute with the mayor of Chicago. Lee Dep. 27, 41, 45-46, Ex. 2; Lee Decl. Ex. 4. Phillips gave plaintiff the name and contact information of a doctor, and asked her to attend an appointment made for plaintiff by Gail D. Duncan, a vendor case worker for defendant.[4] Lee Decl. ¶ 9; Phillips Decl. ¶ 11. Plaintiff was given paid time off from the meeting on February 19, 2010, to the end of the month.[5] Lee Decl. ¶ 9; Phillips Decl. ¶¶ 11-12. Plaintiff was told that no disciplinary action was being brought against her, and that the time off would not appear in plaintiff's personnel folder. Lee Decl. Ex. 4. Subsequent to this meeting, plaintiff checked with the resource desk to ensure that her time would be correctly coded as paid leave. Id. It had not been, and she resolved the issue before leaving. Id. at Ex. 7.

Plaintiff went to the doctor's appointment on February 24, 2010. Lee Dep. 49; Lee Decl. ¶ 10. She refused to sign a waiver, hand over her insurance card, or pay any co-pay for the visit. Lee Dep. 49; Lee Decl. ¶ 10, Ex. 8. Plaintiff saw the doctor briefly, but refused to discuss anything with

---

[4] Plaintiff has also presented some evidence that the contact information given to her was erroneous when compared to the phonebook. Lee Decl. Exs. 5-6.

[5] Plaintiff characterizes this action as a suspension and assassination of character that will prevent her future promotion within the company, which defendant disputes. Lee Decl. ¶ 9.

4

him, so that no medical evaluation could be performed. Lee Dep. 50; Lee Decl. Ex. 8. Plaintiff returned to work a few days later, her entry badge was re-activated, and she was not subjected to any further requests for evaluation. Lee Dep. 53. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on the February 19, 2010, meeting with Phillips and Lambertus, for discrimination on the basis of race and disability. Compl. ¶¶ 4, 6-11; Lee Dep. 68-69.

C.  Defendant's Treatment of Other Employees

Plaintiff's race is black or African-American, and she claims that her white or Caucasian co-workers were not given the same harsh treatment described above for similar conduct.[6] Phillips and Lambertas are both white, and in supervisory positions in plaintiff's place of employment. Compl. ¶ 4; Phillips Decl. ¶¶ 2-3; Lee Dep. 11-12. Sandra Settle, a white female and former team manager, vandalized plaintiff's property by pounding on her purse twice while plaintiff was working at her desk, eventually breaking plaintiff's headset. Lee Decl. ¶ 8; Lee Dep. 23, 28-29. Settle no longer works with plaintiff and was not referred to a doctor for examination as a result of this incident. Pl.'s Reply to Resp. to First Set of Interrogs. 2; Lee Decl. ¶ 8; Lee Dep. 29. Settle paid to replace plaintiff's headset. Defendant did not take any further disciplinary action against her, despite the incident coming to the attention of Phillips. Lee Dep. 29-30.

---

[6] Plaintiff also claims that her race has caused defendant to pass her up on promotions in the company before the meeting that formed the basis for this suit, in relation to a "Coach Mentor Program," which was not the subject of her EEOC complaint. Pl.'s Mem. in Objection 2.

5

Another incident that plaintiff asserts is similarly strange and/or aggressive, occurred when another team manager, Lisa Ferguson,[7] hit plaintiff on the back of her neck while she was sitting at her desk. Lee Dep. Ex. 2; Lee Decl. ¶ 8. In surprise and pain, plaintiff yelled into the phone during a client call. Lee Dep. Ex. 2; Lee Decl. ¶ 8. This incident was reported to Phillips, but Ferguson was not referred to a doctor and remains an employee of defendant. Lee Dep. Ex. 2; Lee Decl. ¶ 8. Plaintiff spoke to Ferguson about the incident, and plaintiff was not assaulted by Ferguson again.[8]

## DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

---

[7] The race of Ferguson is not clear from the record. Plaintiff admits that she does not know Ferguson's race, but believes her to be of American Indian descent. Pl.'s Mem. in Objection 15. Without any assertion to the contrary by defendant, the court construes liberally this *pro se* statement as an assertion that Ferguson is outside Lee's protected class. As discussed infra Discussion Part B.1, the fact of Ferguson's race is not material where plaintiff's race discrimination claims fail on other grounds.

[8] Plaintiff does allege that she saw Ferguson hit another employee, but to plaintiff's knowledge, that incident went unreported by her co-worker.

6

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but to determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion. Id. at 248-49.

"A document filed *pro se* is to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). See also Wojcicki v. Aiken Technical Coll., 360 F. App'x 484, 487 (4th Cir. 2010) (a *pro se* Title VII litigant is entitled to have pleadings read liberally). Liberal construction is particularly appropriate when a *pro se* complaint raises civil rights issues. Brown v. N. Carolina Dept. of Corr., 612 F.3d 720, 722 (4th Cir. 2010). However,

> a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them . . . . The special judicial solicitude with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.

Weller v. Dep't of Soc. Services for City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990) (internal quotation marks omitted).

B. Plaintiff's Discrimination Claims

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race," 42 U.S.C. § 2000e-2(a)(1). Similarly, the Americans with Disabilities Act

7

("ADA") makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Where, as here, a plaintiff lacks direct evidence of discrimination on the basis of race or disability, she may rely on the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[9]

Satisfaction of the McDonnell Douglas test is a three-step process. First, plaintiff must put forward sufficient evidence to

> establish[] a prima facie case of discrimination .... If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate ... reason for the adverse employment action .... Assuming the employer meets this burden of production, ... the burden shifts back to plaintiff to prove by a preponderance of the evidence that the employer's stated reasons ... were a pretext for discrimination.

Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc).

1.  Title VII Race Discrimination Claims

Plaintiff's *pro se* complaint, liberally construed, alleges disparate treatment in discipline and failure to promote based on racial discrimination. Accordingly, the court analyzes below whether, with respect to plaintiff's claim of discrimination on the basis of race, there is genuine dispute as to any material fact, and whether defendant is entitled to judgment as a matter of law.

   a.  Failure to Promote

To demonstrate a *prima facie* case of discrimination for failure to promote, plaintiff must show that "(1) she is a member of a protected group, (2) she applied for the position in question, (3)

---

[9] See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 1999) (applying McDonnell Douglas framework to a Title VII race discrimination claim); Raytheon Co. v. Hernandez, 540 U.S. 44, 48-52 (2003) (applying the McDonnell Douglas framework to a case brought under the ADA).

8

she was qualified for the position, and (4) the defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). The fourth element, "an inference of unlawful discrimination," is satisfied where a position is filled by an applicant outside plaintiff's protected group. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994).

Here, plaintiff complains that the meeting and paid leave (or "suspension") at issue gave plaintiff "no hope or expectations of ever being promoted to another position within the company." Pl.'s Mem in Objection 4. However, plaintiff fails to name any particular position that she applied for and was rejected from subsequent to the meeting, as required to show the second and fourth elements of this claim. Anderson, 406 F.3d at 268. Therefore, plaintiff has not met her initial burden of establishing a *prima facie* case that defendant failed to promote her because of plaintiff's race.

b.  Disparate Treatment in Discipline

In order to demonstrate a prima facie case of discrimination in discipline, plaintiff must show that (1) "she is a member of a protected class;" (2) the "conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class;" and (3) "she suffered more severe discipline for her misconduct as compared to those employees outside the protected class." Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011). The parties do not dispute that plaintiff is a member of a protected class under Title VII. Therefore, the first element of disparate treatment in discipline has been met.

As to the second element, plaintiff offers two instances of misconduct by other employees for comparison, which she deems to be at least as "aggressive" or "strange" as her own behavior.

9

First, plaintiff alleges that Settle acted in a similar manner by breaking plaintiff's headset, but was not referred to a doctor for evaluation. The conduct of plaintiff that was brought to Phillips's attention (accusing others of stalking and expressing concern about being watched) is very different in nature from Settle's actions of pounding on a co-worker's purse. Furthermore, plaintiff's conduct appeared to be ongoing. Phillips was given a list of concerns from Thompson due to her interactions with plaintiff from July to December of 2009. Phillips Decl. ¶6, Ex. A. Phillips then waited two more months for plaintiff to accuse another co-worker of stalking before meeting with plaintiff. Settle, on the other hand, pounded on plaintiff's purse one day, then did it again the next day and broke plaintiff's headset. After those two times, Settle stopped and paid plaintiff the replacement cost for a new headset.

The actions of plaintiff and Settle are materially different both in nature and duration, thus failing to provide a good comparison to satisfy the second element of a disparate treatment in discipline claim. Cf. Lightner v. City of Wilmington, 545 F.3d 260, 263 (4th Cir. 2008) (comparing the exact same conduct of ticket fixing). Furthermore, plaintiff and Settle held different positions in the company, making Settle an inadequate person for comparison to plaintiff under the McDonnell Douglas framework. See id. at 265 (explaining that it is not a sufficient comparison to use an officer of a different rank to show that officer was punished differently because of race).

Plaintiff also offers for comparison the incident with Ferguson, where she hit plaintiff on the back of the neck during a client call. This "assault" happened only once, plaintiff talked to Ferguson about it, and Ferguson was not referred to a doctor for evaluation. Plaintiff's comparison to Ferguson fails for the same reasons as her comparison to Settle: Ferguson's actions were materially different both in nature and time from plaintiff's own conduct. Therefore, plaintiff cannot make out

10

Case 5:11-cv-00294-FL   Document 59   Filed 03/27/13   Page 10 of 16

a *prima facie* case for disparate treatment in discipline under Title VII. Having disposed of plaintiff's race discrimination claims, the court now turns to her claims for discrimination based on disability.

2.   Disability Discrimination under the ADA

In order to show a prima facie case for discrimination under the ADA, plaintiff must show that: (1) plaintiff is disabled or regarded as disabled;[10] (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to unlawful discrimination because of her disability or perceived disability. Young v. United Parcel Service, Inc., No. 11-2078, 2013 WL 93132, at *4 (4th Cir. Jan. 9, 2013). There is no dispute over the fact that plaintiff was and is qualified to perform her work, and received excellent evaluations. Therefore, plaintiff meets the second prong, showing that she is a qualified individual. Only the first and third requirements are at issue in this case.

As to the first requirement, plaintiff does not claim that she actually has a disability as defined under the ADA. Lee Dep. 62. However, plaintiff may have been "regarded as disabled" by defendant. In order to show that she was "regarded as disabled," plaintiff must show that "she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12101(3)(C). There is some evidence in this case that defendant regarded plaintiff as having a mental impairment. See Wilson v. Phoenix Specialty Mfg. Co., Inc., 513 F.3d

---

[10] Note that some protections under the ADA, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §§ 12101 *et. seq.* ("ADAAA"), do not extend to individuals who are merely "regarded as" disabled. For example, individuals who are only regarded as disabled are not entitled to reasonable accommodation. The analysis focuses on whether discrimination occurred because an individual was regarded as having a physical or mental impairment, whether or not the individual actually has any impairment or whether that impairment limits or is perceived to limit major life activity. 42 U.S.C. § 12102(3). The ADAAA significantly expanded the coverage of the ADA, in order to relax threshold inquiries regarding whether an individual qualifies for protection. 29 C.F.R. § 1630.1(c)(4).

378, 385 (4th Cir. 2008) (focusing, for the purposes of a "regarded as disabled" theory, "on the reactions and perceptions of the employer's decisionmakers"). Phillips had been in contact with other managerial staff and human resources regarding the behavior of defendant before deciding to finally meet with her. Phillips Decl. ¶¶ 5-7, 10-11, Exs. A-B. Phillips discussed plaintiff's mental instability in a chain of emails that speculated about plaintiff's "emotional well being," her potential threat to the "safety of all employees," and her "heightened sense of paranoia." Id. at Ex. B. Phillips wrote: "I am not comfortable that [plaintiff] 'thinks' and 'believes' that people are following her, tracking her etc." Id. These statements (coupled with the referral to a doctor) may be reasonably interpreted as defendant's perception that plaintiff had a mental impairment, including speculation that plaintiff suffers from paranoia and hallucinations. At a minimum there is some question of fact as to whether defendant regarded plaintiff as mentally impaired, which is not appropriate to decide at this summary judgment stage.

As to the third element of plaintiff's *prima facie* claim, 42 U.S.C. § 12112(d) provides that discrimination generally includes "medical examination and inquiries." The ADA further states that employers "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with a business necessity." 42 U.S.C. § 12112(d)(4). Under this element plaintiff's claim must fail, because she was not required to undergo a "medical examination." Id. The undisputed facts show that although plaintiff was asked to attend an appointment and went to the doctor's office, she decided not to release any medical information or discuss her physical or mental condition with anyone. Lee Dep. 51, 65. Despite her refusal to undergo a medical examination, plaintiff was not

12

Case 5:11-cv-00294-FL   Document 59   Filed 03/27/13   Page 12 of 16

fired or disciplined in any way. Phillips Decl. ¶ 15. She returned to work at the end of her paid leave and continues to work for defendant. Id. Therefore, plaintiff cannot establish a *prima facie* case for discrimination on the basis of disability under the ADA.[11]

C.   Plaintiff's Defamation Claim

Plaintiff checked the box for libel and slander on her civil cover sheet attached to *pro se* complaint, and mentioned "slander" in her response to defendant's motion for summary judgment. Construing these documents liberally, the court will examine the merits of her defamation claim. Although defendant did not brief defamation specifically, it has moved for summary judgment on all claims contained in the complaint.

Slander is spoken defamation and libel is written defamation. Greer v. Skyway Broad. Co., 256 N.C. 382, 390-91, 124 S.E.2d 98, 104 (1962). To plead a claim for defamation *per se*[12] in North Carolina, plaintiff must allege that:

> (1) defendant spoke or published base or defamatory words which tended to prejudice [plaintiff] in [her] reputation, office, trade, business or means of livelihood or hold [plaintiff] up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person.

Cummings v. Lumbee Tribe, 590 F.Supp.2d 769, 774 (E.D.N.C. 2008) (internal quotation marks omitted). Alternatively, if extrinsic or explanatory evidence is needed in connection with the words to show they have defamatory character, then plaintiff must prove defamation *per quod*. Id. This

---

[11] Defendant argues, in the alternative, that even if plaintiff had been required to attend the medical appointment, it was "job-related and consistent with [a] business necessity" because of plaintiff's "troubling behavior." Def.'s Mem. in Supp. 12 (citing Watson v. City of Miami Beach. 177 F.3d 932, 935 (11th Cir. 1999)). The court need not reach that issue here because no "medical examination" was required. See 42 U.S.C. § 12112(d)(4).

[12] Defamation *per se* means the words are "susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party." Flake v. Greensboro News Co., 212 N.C. 780, 786, 195 S.E. 55, 60 (1938).

13

claim is composed of the same elements of defamation *per se*, with the additional requirements that defendant pleads: (4) special damages; and (5) malice. Id.

Despite the liberal construction afforded *pro se* plaintiff's documents, Erickson, 551 U.S. at 94, plaintiff has failed to "affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact" as to whether defendant committed slander or libel. Matsushita Elec. Indus. Co. Ltd., 475 U.S. at 586-87. The court has reviewed plaintiff's complaint, her opposition to defendant's deposition of plaintiff, her declaration, and her opposition to defendant's motion for summary judgment. Plaintiff states in her opposition to defendants' motion for summary judgment that defendant was "providing false information regarding Plaintiff's character" and "malicious slanderous remarks" that "contaminated" and "marred" her personnel record to the executive level. Pl.'s Mem. in Objection 6-9.

It appears that the remarks plaintiff references are those written in the chain of emails attached to Phillips's declaration. Phillips Decl. Ex. B. As discussed, these emails are between Phillips and other employees of defendant concerning plaintiff's unusual behavior and what action may be necessary where said behavior has not detracted from her excellent performance as an employee. See id. Some of the words and phrases that tend to show the first element of a defamation claim include: (1) "This has everything to do with keeping an eye on safety of all employees and I don't think either one of us is skilled/trained to make a determination on any threats that might be presented;" (2) "[plaintiff] has a heightened sense of paranoia;" (3) plaintiff considers a matter of common knowledge to be "a conspiracy;" (4) "her behavior is radical and needs attention . . . [and] has the potential to create an uncomfortable environment;" (5) "There are . . . potential

14

risks to our environment and to [plaintiff];" and (6) "I am not comfortable that she 'thinks' and 'believes' that people are following her, tracking her etc."

However, in order to show either defamation *per se* or *per quod*,[13] plaintiff must allege publication of the defamatory statements to a third party, aside from plaintiff and defendant. See Cummings, 590 F.Supp.2d at 774. In this case, plaintiff is suing AT&T, the emails submitted by defendant were generated internally within AT&T, and there is no evidence or allegation that anyone other than defendant's employees read them. Cf. Tyer v. Leggett, 246 N.C. 638, 641, 99 S.E.2d 779, 782 (1957) (finding that there was publication of a statement made by defendant employer to plaintiff employee in the presence of plaintiff's mother). Therefore, plaintiff has failed to plead the third element of her defamation claim. See id. (finding that another statement which was made loudly in defendant's office where was some possibility it could have been overheard by unnamed passers-by was not "competent evidence from which the jury might find that there was a publication of the alleged slanderous words").

In addition, plaintiff has not pled or proved any special damages as required for a claim of defamation *per quod*. See Cummings, 590 F.Supp.2d at 774-75 (finding special damages where plaintiff was suspended without pay). The only damages plaintiff seems to assert she has suffered is lack of promotion, which the court has already dismissed as plaintiff has not shown she applied for and was denied any such promotion subsequent to the meeting. See supra Discussion Part B.1.a. Accordingly, defendant's motion for summary judgment as to plaintiff's claim of defamation is GRANTED.

---

[13] Note that it does not appear from these statements that plaintiff can make out a case for defamation *per se*, where defendant has alleged a plausible alternative interpretation of them. Namely, that the emails show concern over plaintiff's well-being.

15

D.     Plaintiff's HIPAA Claim

Plaintiff claims that defendant's attempt to have her waive her privacy as to medical information and share a doctor's evaluation (which did not actually take place) with defendant, was a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26 and 42 U.S.C.). However, HIPAA does not create a federal private cause of action.[14] Barefoot v. Derry, No. 5:09-ct-3143, 2011 WL 2746313, at *2 (E.D.N.C. July 13, 2011) (citing Acara v. Banks, 470 F.3d 569, 571 (5th Cir. 2006)). Therefore, defendant's motion for summary judgment as to plaintiff's claim under HIPAA is GRANTED.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 46) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 27th day of March, 2013.

LOUISE W. FLANAGAN
United States District Judge

---

[14] Even assuming, *arguendo*, that plaintiff could bring a claim under HIPAA, she seeks to do so pursuant to the section on wrongful disclosure of individually identifiable health information. 42 U.S.C. § 1320d-6. As discussed supra Statement of Undisputed Facts Part B. and Discussion Part B.2., plaintiff did not disclose any medical information directly to defendant or to the doctor she was referred to by defendant. Therefore, no violation of that HIPAA rule has been alleged.

16